UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

Sharon J. Cobham,

Bankruptcy Case No.:
13-06340-8-SWH

       Debtor.

---

Nicole LeCann, D.D.S., et al.

       Plaintiffs,

vs.

Adversary Proceeding Case No.:
14-00002-8-SWH

Sharon J. Cobham

       Defendant.

---

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs Nicole LeCann, Receiver Christine Mayhew and Joint Entities LLC (collectively referred to as the "Plaintiffs"), by and through the undersigned counsel, submit this brief in support of their request that this Court enter Judgment on the Pleadings (the "Motion") against Defendant Debtor Sharon J. Cobham pursuant to Rule 12 of the Federal Rules of Civil Procedure made applicable here by Bankruptcy Rule 7012.

FACTS

On October 8, 2013 the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. On January 6, 2014 the Plaintiffs filed a Complaint Seeking Determination as to Dischargeability of Judgment Debts. On March 3, 2014, Debtor filed her Answer to Plaintiffs' Complaint. In that Answer, Debtor admitted that:

> Admitted that judgment was entered against the Defendant on November 7, 2012 by the North Carolina Business Court in LeCann v. Cobham, 10 CVS 11169 in favor of each of the Joint

Entities in the amounts and characterizations set forth below:

|  | North Hills | Durham | Apex | Burlington | Total |
|---|---|---|---|---|---|
| Compensatory | $ 234,240 | $ 174,969 | $ 75,800 | $ 74,879 | $ 559,888 |
| Punitive | $ 702,720 | $ 524,907 | $ 227,400 | $ 224,637 | $ 1,679,664 |

Admitted that judgment against Defendant in favor of Ms. LeCann was entered pursuant to the November 7, 2012 Judgment and upon an April 3, 2013, Order on Motion Regarding Costs in the amount of $149,899.55.

Answer at ¶4.

Defendant admits the case styled LeCann v. Cobham, 10 CVS 11169 was litigated before the North Carolina Business Court.

Answer at ¶18.

Admitted that the Receiver made demand for payment and Defendant made no payments.

Answer at ¶14.

Admitted that Judge Jolly entered an order in Lecann v. Cobham, 10-CVS-11169, on October 7, 2013, ratifying an agreement between Christine Mayhew as receiver for the Joint Entities and Ms. LeCann. The terms of the agreement speak for themselves.

Answer at ¶2.

Defendant admits that Exhibit A of the Complaint is a copy of the Judgment entered by the Business Court on November 7, 2012. Defendant admits Exhibit B of the Complaint is the Order on Motion Regarding Costs entered by the Business Court on April 3, 2013. The documents speak for themselves.

Answer at ¶12. Defendant further admitted that "Debtor did not appeal the Judgments and they were final and no longer appealable before the Petition date." Answer at ¶19 admitting allegations of Complaint at ¶19.

In response to the allegation that:

2

> The full pleadings and filings in the Business Court case numbering more than 100 separate filings can be found at http://ncbusinesscourt.net using the public access link and searching on the Debtor's name.

Complaint at ¶18; the Debtor answered:

> The pleadings and filings in LeCann v. Cobham, 10 CVS 11169, and the location where such may be found speak for themselves and require no response.

Answer at ¶18.

The Judgments are attached to Plaintiffs' Motion as Exhibits A and B. The Receiver's Motion for Limited Reopening of Case and Approval of Agreement for Transferring Judgments, Final Winding Up and Discharge, the October 7, 2013 Order and ratified Agreement are attached to the Motion as Exhibit C. The Business Court's Order for Defendant to Produce Documents and Property in Aid of Execution issued on October 4, 2013, as amended on October 8, 2013 is attached to the Motion as Exhibit D. See also Answer at ¶¶ 2, 6, 12 and 18.

In the Judgments, the Business Court made pertinent findings including:

> a.  "The parties having stipulated to this matter being tried non-jury and in the North Carolina Business Court … this case thereafter was called for trial on August 15, 2011. At the close of Plaintiff's evidence, the court directed verdict in favor of Defendant upon Plaintiff's claim for Tortious Interference with Contracts and Prospective Economic Advantage (Counts V and VI of the Complaint), pursuant to Rule 50, North Carolina Rules of Civil Procedure ("Rule(s)"). Thereafter, at the close of all the evidence the court denied all subsequent Rule 50 motions. The court directed the parties to submit their closing arguments in the form of post-trial briefs. Exhibit A, p. 1.
>
> b.  "LeCann and Cobham were the only two officers, directors and shareholders/owners of the Joint Entities. The practice and agreement between LeCann and Cobham was to manage the Joint Entities together through an informal arrangement they commonly referred to as "corporate," "Cobham & LeCann, Inc.," "C&L," "wemakencsmile.com" and other similar designations

(collectively, "Arrangement"). The Arrangement allowed LeCann and Cobham to direct resources of the Joint Entities towards accounting, recruiting, cash management, acquisitions and expansions, planning and market assessments, among other activities. [7] Cobham served as president of the Joint Entities and was responsible for the overall direction and leadership of the Joint Entities, while LeCann managed the details. Accordingly, Cobham exercised the power to transfer money, hire and fire personnel, pursue expansion concepts and perform other management decisions. Exhibit A, Para. 5 & 6.

c.   "At some time in 2007, Cobham began a long series of complicated, wrongful, self-dealing transfers ("Transfers") of funds belonging primarily to four of the Joint Entities: the North Hills Practice, the Durham Practice, the Burlington Practice and the Apex Practice ("Damaged Joint Entities"). Cobham effected these Transfers in a number of ways. The Transfers involved the transferring of funds from the Damaged Joint Entities to the Winston-Salem II Practice and to Cobham's individually-owned practice, the Winston-Salem I Practice. These funds were transferred using online banking and company checks written by Cobham, her sister and others acting under Cobham's direction. Cobham also frequently transferred funds between the Damaged Joint Entities without authority or a good faith reason. Exhibit A, Para. 10.

d.   "By way of the Transfers, Cobham engaged in knowing and willful self-dealing and conflict-of-interest transactions, to the material economic detriment of the Damaged Joint Entities and LeCann." Exhibit A, Para. 12.

e.   "... Cobham transferred, misappropriated, converted, diverted or otherwise obtained money or other value from the Damaged Joint Entities for her benefit or for the ultimate benefit of her solely-owned Winston-Salem I Practice." Exhibit A, Para. 20.

f.   "Cobham repeatedly ignored corporate formalities between the Joint Entities and did so knowingly and to her own benefit. In the course of her wrongful actions with regard to the Damaged Joint Entities, Cobham ignored the corporate boundaries and structures .... Cobham repeatedly, knowingly and purposefully commingled assets and monies of the various Joint Entities with those of the Winston-Salem I Practice without regard to their respective corporate identities." Exhibit A, Para. 21.

g.   "Cobham's knowing wrongful conduct was intentional and

was in breach of her fiduciary duties to the Damaged Joint Entities and damaged the Joint Entities in the amounts listed in paragraph 25 above. Cobham's breach of her fiduciary duties constituted constructive fraud. Cobham intentionally engaged in this constructive fraud, consciously using her position of trust to cause harm to the Joint Entities and LeCann. The Damaged Joint Entities collectively are entitled to compensatory damages in the amount of $559,888." Exhibit A, Para. 29.

h. "Cobham's conduct of self dealing and constructive fraud as to the Joint Entities was willful or wanton. LeCann has proven that Cobham's conduct as to the Joint Entities was willful or wanton by clear and convincing evidence." Exhibit A, Para. 30.

i. "Cobham's willful or wanton conduct and intentional constructive fraud supports an award of punitive damages to the Damaged Joint Entities. … The total amount of punitive damages awarded to the Damaged Joint Entities therefore is $1,679,664. The court finds that this amount bears a rational relationship to the sum necessary to punish Cobham for her egregiously wrongful acts and to deter her and others from committing similar wrongful acts." Exhibit A, Para. 33.

j. "Under the facts of this matter, the court CONCLUDES that Cobham's knowing breach of her fiduciary duties constituted constructive fraud against the Damaged Joint Entities. Accordingly, the Damaged Joint Entities are entitled to recovery of compensatory damages proximately suffered as a result of Cobham's breach of her fiduciary duties and her constructive fraud." Exhibit A, Para. 44.

k. "Here, an award of punitive damages is appropriate based upon Cobham's breach of her fiduciary duties, as well as her willful or wanton conduct, both of which LeCann has proven by clear and convincing evidence. Cobham knowingly and purposefully engaged in repeated self-dealing and conflict-of-interest actions that caused the Damaged Joint Entities to suffer from devastating cash-flow problems, and which caused material financial injuries to the Damaged Joint Entities. Accordingly, the court CONCLUDES that an award of punitive damages against Cobham and in favor of the Damaged Joint Entities is appropriate in this matter." Exhibit A, Para. 48.

l. "NOW THEREFORE, based upon the foregoing FINDINGS of FACT and CONCLUSIONS of LAW, it hereby is ORDERED, ADJUDGED AND DECREED, that

Judgment in this matter is ENTERED as follows:

[73] Plaintiff SHARON COBHAM, D.D.S. & NICOLE LECANN, D.D.S. IV, P.A. (a/k/a NORTH HILLS FAMILY DENTAL CARE), shall have and recover from Defendant Sharon J. Cobham the amount of Two Hundred Thirty-Four Thousand Two Hundred Forty ($234,240) Dollars, as compensatory damages.

[74] Plaintiff SHARON COBHAM, D.D.S. & NICOLE LECANN, D.D.S. V, P.A. (a/k/a DURHAM FAMILY DENTAL CARE), shall have and recover from Defendant Sharon J. Cobham the amount of One Hundred Seventy-Four Thousand Nine Hundred Sixty-Nine ($174,969) Dollars, as compensatory damages.

[75] Plaintiff SHARON JOVANNA COBHAM, D.D.S. & NICOLE LECANN, D.D.S. & ASSOCIATES, P.A. (a/k/a APEX FAMILY DENTAL CARE), shall have and recover from Defendant Sharon J. Cobham the amount of Seventy-Five Thousand Eight Hundred ($75,800) Dollars, as compensatory damages.

[76] Plaintiff SHARON J. COBHAM, D.D.S. & NICOLE LECANN, D.D.S., P.A. (a/k/a ANNE ELIZABETH FAMILY DENTAL CARE) shall have and recover from Defendant Sharon J. Cobham the amount of Seventy-Four Thousand Eight Hundred Seventy-Nine ($74,879) Dollars, as compensatory damages.

[77] Plaintiff SHARON COBHAM, D.D.S. & NICOLE LECANN, D.D.S. IV, P.A. (a/k/a NORTH HILLS FAMILY DENTAL CARE) shall have and recover from Defendant Sharon J. Cobham the amount of Seven Hundred Two Thousand Seven Hundred Twenty ($702,720) Dollars, as punitive damages.

[78] Plaintiff SHARON COBHAM, D.D.S. & NICOLE LECANN, D.D.S. V, P.A. (a/k/a DURHAM FAMILY DENTAL CARE) shall have and recover from Defendant Sharon J. Cobham the amount of Five Hundred Twenty-Four Thousand Nine Hundred Seven ($524,907) Dollars, as punitive damages.

[79] Plaintiff SHARON JOVANNA COBHAM, D.D.S. & NICOLE LECANN, D.D.S. & ASSOCIATES, P.A. (a/k/a APEX FAMILY DENTAL CARE) shall have and recover from Defendant Sharon J. Cobham the amount of Two Hundred Twenty-Seven Thousand Four Hundred ($227,400) Dollars, as punitive damages.

[80] Plaintiff SHARON J. COBHAM, D.D.S. & NICOLE LECANN, D.D.S., P.A. (a/k/a ANNE ELIZABETH FAMILY DENTAL CARE) shall have and recover from Defendant Sharon J. Cobham the amount of Two Hundred Twenty-Four Thousand Six Hundred Thirty-Seven ($224,637) Dollars, as punitive damages.

[81] Interest on the foregoing awards shall be taxed to Defendant Sharon J. Cobham as provided by law.

[82] Taxable costs shall be charged to Defendant Sharon J. Cobham.

Exhibit A, Para 73-82.

m.  "Following a non-jury trial in this matter, the court entered Judgment on November 7, 2012, in favor of Plaintiff LeCann and against Defendant Cobham ("Judgment"). As part of the Judgment, the court ordered taxable costs to be charged against Defendant Cobham.  Exhibit B, Para. 2.

n.  "The Bill of Costs itemizes Plaintiff LeCann's costs incurred while litigating the Claims and represents the total costs requested to be $154,924.85. The breakdown of the requested costs is as follows:

>  a. Filing Fees – $1,132.00
>  b. Service of Process by Certified Mail – $190.90
>  c. Mediation Fees – $3,590.63
>  d. Research Fees – $53.81
>  e. Expert Witness Fees for Testifying – $425.00
>  f. Stenographic Assistance and Deposition Transcripts – $8,300.55
>  g. Discovery Expenses – $3,839.49
>  h. Receiver Expenses – $137,392.47.

Exhibit B, Para. 3.

o.  "Accordingly, the court CONCLUDES that Plaintiff LeCann should be entitled to an award of costs for expenses incurred relating to service of process by certified mail, mediation fees, receiver expenses, expert witness fees for testifying and stenographic services for the taking of depositions, such costs totaling $149,899.55.  Exhibit B, Para 9.

7

    p. "The Clerk of Court is authorized to include as an award of costs to Plaintiff LeCann, and taxable against Defendant Cobham pursuant to the Judgment previously entered in this matter, an amount totaling $149,899.55 for taxable costs incurred in this civil action. Exhibit B, Decretal Para. 2.

By order dated October 4, 2013 and amended on October 8, 2013, the North Carolina Business Court determined that the Debtor's conduct, in regard to a sheriff's sale in an effort to execute on one of the Judgments, was fraudulent finding that:

> "The court finds that the Defendant's conduct in participating in the Sheriff's execution sale undertaken to satisfy in whole or in part a judgment against Defendant was a fraud upon her creditors including the judgment creditors holding the judgments entered in this case. ... Defendant's attempt to hide her actions behind her father and the wholly owned dental practice are not credible and were fraudulent as to the Sheriff and the judgment creditors. ... Dobson v. Erwin, 18 N.C. 569 (1836)."

See Answer at ¶6 and Business Court's Order for Defendant to Produce Documents and Property in Aid of Execution issued on October 4, 2013, as amended on October 8, 2013 attached hereto as Exhibit D.

## ARGUMENT

The findings of the Business Court establish that:

 a. Debtor's misconduct as described in the Judgments amounts to a willful and malicious injury by Debtor to Plaintiffs;

 b. Debtor undertook this misconduct in defalcation of her fiduciary obligations while acting in a fiduciary capacity in which she was entrusted with specific funds and misused them for her own benefit; and

 c. Debtor's conduct constitutes embezzlement, if not larceny.

Therefore, all of the indebtedness Debtor owes to Plaintiffs on account of the Judgments is nondischargeable under the provisions of section 523(a)(4) and (6) of the Bankruptcy Code.

The Business Court findings are judicially established and collateral estoppel as to Debtor

and binding upon this Court.

> For purposes of the court's analysis, there are two debts at issue in this dischargeability action …. Based on the facts and findings of the District Court, the bankruptcy court must determine whether these debts are based on a willful and malicious injury inflicted by the debtor pursuant to 11 U.S.C. § 523(a)(6) in order to determine their dischargeability.

In re Scott, 10-00794-8-JRL, 2011 WL 672055 (Bankr. E.D.N.C. Feb. 17, 2011) aff'd sub nom. Scott v. Metro. Health Corp., 5:12-CV-383-F, 2013 WL 4520264 (E.D.N.C. Aug. 23, 2013) aff'd, 13-2181, 2014 WL 1303468 (4th Cir. Apr. 2, 2014).

> The bankruptcy court is collaterally estopped from deciding whether an injury was willful and malicious where such issues were already determined in prior judicial proceedings. See Hagen v. McNallen (In re McNallen), 62 F.3d 619, 625 (4th Cir.1995). Furthermore, the Supreme Court has held that collateral estoppel principles apply in dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284–85 n. 11 (1991). For collateral estoppel to apply, the first court must have made "specific, subordinate, factual findings ... encompass[ing] the same prima facie elements as the bankruptcy issue." Dennis v. Dennis (In re Dennis), 25 F.3d 274, 278 (5th Cir.1994); See also Combs v. Richardson, 838 F.2d 112, 117 (4th Cir.1988) (holding that issue preclusion only applies where there is a congruence between the statutory standard in § 523(a)(6) and the prior judgment).

Id.

The Business Court made numerous findings that Debtor Cobham's conduct giving rise to the Judgments was willful, wanton, intentional and knowing. Exhibit A at Paras. 12, 21, 29, 30, 33, 44, and 48.

> In terms of factual findings which demonstrate a "malicious injury," the court also finds that Judge Enslen made several which satisfy § 523(a)(6). Again, a malicious injury occurs when the "debtor was knowledgeable that his actions were wrong." Buck, 406 B.R. at 706. Judge Enslen found "[t]he filing and litigation of the retaliation claim was, in light of this record, motivated by an 'improper purpose' to harass and extort Plaintiff's former employer." December 2005 order, at 11; see also December 2005

9

> order, at 18 (describing the suit as "frivolously and vexatiously maintained"). He refers to Ms. Scott's knowledge that the retaliation claim was false, and to her intentional concealment of crucial evidence. December 2005 order, 2, 11. Although Judge Enslen does not use the precise term, "malicious," his findings are tantamount to it.

Id.

The determination that a debt is non-dischargeable does not require the Court to re-litigate facts, which have already been decided.

> We now affirm the judgment of the district court. The portion of the trial record before us amply demonstrates that the requirements for preclusion are met in this case. While in many instances an examination of the full record and transcript of the earlier proceeding may be necessary to determine whether the prerequisites of preclusion, and thereby the federal policies implicated in the Bankruptcy Code, are satisfied, see Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), we do not require that bankruptcy courts invariably take extrinsic evidence before a prior civil judgment may be assigned preclusive effect. We do hold that a jury's finding that a defendant's actions were willful and malicious will collaterally estop the judgment debtor from relitigating that issue in a discharge proceeding only if an examination of the record of the earlier proceeding satisfies the bankruptcy court that the issue was raised and litigated and that the resolution of the issue was necessary to the verdict in the prior case.

Combs v. Richardson, 838 F.2d 112, 114 (4th Cir. 1988). The full record of the extensive litigation of the lawsuit against the Debtor Cobham is available to the Court at ncbusinesscourt.net. Answer at ¶18.

> The application of collateral estoppel to preclude relitigation of questions actually litigated and necessarily decided by a jury in an earlier diversity action is consistent with the policy of the bankruptcy statute and the Supreme Court's decision in Brown v. Felsen. As noted by the Sixth Circuit in Spilman v. Harley, 656 F.2d 224: The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts

10

> and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the ... [earlier] proceeding on the debt. However, that Congress intended the bankruptcy court to determine the final result-dischargeability or not-does not require the bankruptcy court to redetermine all the underlying facts. Id. at 227.

Combs at 115.

> The application of a collateral estoppel bar obviously serves important interests. These interests do not disappear simply because the subsequent proceedings are in bankruptcy. Judicial resources are always conserved by avoiding duplicative relitigation of identical issues. The application of the bar ensures that parties will eschew the piecemeal presentation of their case. There is also no reason here to prefer the fact-finding of a bankruptcy judge to that of a jury so long as the same issue was presented in each proceeding. The earlier jury trial was necessarily closer in time to the disputed events. … The presentation of the evidence and testimony in a full trial may well be more thorough than in an evidentiary hearing. For all these reasons, the bankruptcy court in this case quite properly declined to disregard the preclusive effect of the earlier tort suit.

Id.

The Judgments preclusively establish each element of collateral estoppel with regard to the facts pertinent to the determination of the dischargeability of the Judgments against Debtor.

> The doctrine of collateral estoppel applies in bankruptcy dischargeability actions. Macik, 535 F.3d at 289. The "judicial proceedings of any ... state ... have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Accordingly, whether a state court decision has a collateral estoppel effect in a dischargeability action is determined under that state's law. Macik, 535 F.3d at 287 (citing Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308, (1980); Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 19 (4th Cir.1997)). Since this case stems from a North Carolina verdict and judgment, we consider the collateral estoppel question under principles of North Carolina law. North Carolina employs a traditional application of collateral estoppel. Macik, 535 F.3d at 288. That application of the doctrine can be summarized as follows: "[w]hen an issue of fact or law is actually litigated and determined by a

11

> valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

In re Walker, 416 B.R. 449, 464-65 (Bankr. W.D.N.C. 2009).

> In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action. … North Carolina courts have abandoned the final requirement of "mutuality of estoppel" for the defensive use of collateral estoppel, so long as the party seeking to reopen the issue "had a full and fair opportunity to litigate" the matter in the previous action.

Sartin v. Macik, 535 F.3d 284, 287-88 (4th Cir. 2008).

The parties to the state court action are either the same as or are in privity with the parties to this Adversary Proceeding. Plaintiff LeCann prosecuted the state court action derivatively obtaining her own Judgment and the derivative Judgments in favor of four corporate entities as set forth above. Pursuant to an agreement with these corporate entities through Plaintiff Christine Mayhew, the state court appointed receiver, the Business Court approved transfer of the Judgments to Plaintiff Joint Entities, LLC. The approved assignment of the Judgments place Plaintiff Joint Entities in privity with the corporate entities. See Answer at ¶2 and Exhibit C. Until discharged, the Receiver Christine Mayhew remains charged with management of the corporate entities and collection of the Judgments. Exhibit A, Para. 83.[1]

Final judgment on the merits has occurred. Answer at ¶19. The findings of the Business Court resulted from actual litigation of the facts found and those facts were necessary to the

---

[1] The discharge of the Receiver is imminent pursuant to the terms of the Order found at Exhibit C but has not yet occurred due to an attempted post-petition appeal by the Debtor which has now been dismissed. See Docket No. 115.

12

Judgment in favor of Plaintiff LeCann on her derivative claims against Debtor for misdeeds as a director of the corporate entities—especially the findings with regard to the punitive damages awarded. Exhibit A, Answer at ¶18 and pleadings referenced in Answer and Complaint found at ncbusinesscourt.net.

The Business Court findings addressed directly the ultimately dispositive factual issues necessary to a finding in favor of Plaintiffs' on their non-dischargeability claims pursuant to sections 523(a)(4) and (6) of the Bankruptcy Code.

> The first issue to be determined is whether the Debtor occupied a fiduciary position, vis-a-vis DMS and Mr. McUmber. The Court finds that he did. First, with respect to DMS, the Debtor was a director of DMS. Directors are unquestionably fiduciaries of the corporations they serve. Airlines Reporting Corp. v. Ellison (In re Ellison), 296 F.3d 266, 270–71 (4th Cir.2002) (looking to West Virginia law); Janssens v. Freedom Medical, Inc., Civ. No. JFM–10–2042, 2011 WL 1642575, at *5 (D.Md.2011) (the term "fiduciaries" includes directors and "and others who occupy 'positions of ultimate trust' " (quoting Spinoso v. Heilman (In re Heilman), 241 B.R. 137, 169 (Bankr.D.Md.1999)); Crockett v. Ferris (In re Ferris), 447 B.R. 516, 523–24 (Bankr.E.D.Va.2011)) (noting that "Virginia law is clear that officers and directors of corporations occupy a fiduciary relationship to the corporation and its stockholders").

In re Giordano, 472 B.R. 313, 328-29 (Bkrtcy.E.D.Va.,2012).

> A director stands in a fiduciary relationship to the corporation and may not use his position of trust to further his private interests. *Meiselman v. Meiselman,* 309 N.C. at 308, 307 S.E.2d at 568. In this case, while Brokers was in a state of transition, Anderson placed his own interests first. By engaging in overreaching transactions with the corporation, Anderson breached his duty of loyalty. Thus, the court finds that the transfer of the Meridian Property, the Note, the Deed of Trust, as well as over $575,000.00 in cash and the credit of any debts owed by Anderson in satisfaction of the Note were in violation of Anderson's fiduciary duty as a director of Brokers.

In re Brokers, Inc., 363 B.R. 458, 474 (Bankr. M.D.N.C. 2007).

> Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. In re DeBerry, 2012 WL 1463598, at *5 (Bankr.M.D.N.C.2012). A debt may be nondischargeable for embezzlement under 11 U.S.C. § 523(a)(4) without the existence of a fiduciary duty. Bullock, 133 S.Ct. at 1760; In re DeBerry, 2012 WL 1463598, at *5. The elements of embezzlement are: (1) entrustment to the debtor of (2) property (3) of another (4) which the debtor appropriates for his or her own use (5) with intent to defraud. In re Groover, 2004 WL 212948, *7 (Bankr.M.D.N.C.2004). See In re York, 205 B.R. at 764 (stating the plaintiff must show (1) the fraudulent, or knowing and willful, (2) misapplication or conversion (3) of property, (4) which belongs to another, (5) by a person to whom such property has been entrusted or into whose hands it has lawfully come). A defense asserting that the property was entrusted to a corporation will not shield an individual debtor from liability under 11 U.S.C. § 523(a)(4), particularly when the debtor is a president and manager of a corporation. See Matter of Berkemeier, 51 B.R. 5, 6–7 (Bankr.S.D.Ind.1983) (finding that that an individual will not be permitted to shield himself by asserting that he was acting as an employee-officer of a corporation). ... Thus, the Debtor knowingly misappropriated property that belonged to C & B Farms that was entrusted to him. See In re Groover, 2004 WL 212948, at *7 (stating that similar to a claim under § 523(a)(2), regarding embezzlement, a debtor may appropriate money for his or her own use by depositing the money into the account of a corporation which is controlled or owned by the debtor). The Court finds that the elements for 11 U.S.C. § 523(a)(4) for embezzlement are met, and the Debtor embezzled those funds. As such, the Debtor may not discharge the Claim.

In re Barnhart, 2013 WL 3779908 (Bkrtcy.M.D.N.C.), 6 (Bkrtcy.M.D.N.C.,2013).

> Embezzlement and larceny do not require a fiduciary relationship. Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." OSB Mfg., Inc. v. Hathaway (In re Hathaway), 364 B.R. 220, 239 (Bankr.E.D.Va.2007). Larceny is the "fraudulent or wrongful taking and carrying away of the property to the taker's use without the consent of the owner." Id. The distinction between the two is that with embezzlement, the original acquisition of the property was lawful or with the owner's consent; while the felonious intent existed from the beginning with larceny. Id. Against this backdrop, the nondischargeability of the State Judgment debt under § 523(a)(4) could not be any clearer.

14

In re Walker, 416 B.R. 449, 467 (Bkrtcy W.D.N.C. 2009).

The Business Court findings establish that Debtor breached her fiduciary duties as a director of the corporate entities intentionally and for her own benefit and that she wrongfully took money that was entrusted to her as a director and as President of the corporate entities. These findings are more than sufficient to establish nondischargeability under section 523(a)(4) of the Bankruptcy Code due to Debtor's knowing and intentional breach of fiduciary duty and embezzlement. Exhibit A, Paras. 5, 6, 10, 12, 20, 21 and 29.

> The same operant facts also give rise to a § 523(a)(6) "willful and malicious injury." A "willful" injury arises from an act of a debtor undertaken with the "intent to cause injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A "malicious" injury does not require a showing of subjective ill will. Kim v. Kim (In re Kim), 2008 WL 2705082, at *3 (Bankr.E.D.Va.2008). Rather, it is sufficient that the act was done intentionally and deliberately in knowing disregard of the rights of another. Id. Further, malice may be implied from the debtor's conduct. First National Bank v. Stanley (In re Stanley), 66 F.3d 664, 667 (4th Cir.1995). The "proper focus ... is not on [debtor's] good intentions, but simply on his exercise of dominion and control over funds that he knew belonged to another." Id. at 668.

Id. at 468. Likewise, the factual findings by the Business Court establish that the Debtor knowingly and intentionally exercised dominion and control over funds that she knew belonged to another. This conduct was expressly found to be willful and wanton by clear and convincing evidence. Exhibit A, Paras. 10, 20, 21, 29, 30, 33 and 48.

> Consequently, the State Judgment debt …, plus Plaintiffs' costs is non-dischargeable pursuant to § 523(a)(4) and (6).

Id. at 469. The full amount of the Business Court Judgments dated November 7, 2012 and April 3, 2013 and found at Exhibits A and B for compensatory and punitive damages and costs are nondischargeable under the Bankruptcy Code.

WHEREFORE, Plaintiffs move this Court for an Order granting judgment in Plaintiffs' favor.

Respectfully submitted, this the 19th day of May, 2014.

                          OAK CITY LAW LLP

By:   /s/ Robert E. Fields III
       Robert E. Fields III
       NC Bar No. 12946
       702 N. Blount St.
       Raleigh, NC 27604
       Rob.Fields@OakCityLaw.com
       Phone: (919) 899-9655
       Fax: (919) 516-0572

       HENDREN & MALONE, PLLC
       Jason L. Hendren
       NC Bar No. 26869
       4600 Marriott Drive, Suite 150
       Raleigh, NC 27612
       jhendren@hendrenmalone.com
       Phone: (919) 420-7867
       Fax: (919) 420-0475

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS was served by electronic means and/or first class mail, postage prepaid, to the parties indicated below at their respective addresses indicated below:

Marjorie K. Lynch
Bankruptcy Administrator
Eastern District of North Carolina
Post Office Box 3758
Wilson, NC 27895
*VIA CM/ECF*

Jason L. Hendren
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
*VIA CM/ECF*

Christine F. Mayhew
Post Office Box 20248
Raleigh, North Carolina 27619
*VIA CM/ECF*

Erik M. Harvey
2200 Silas Creek Parkway, Suite 3A
Winston-Salem, NC 27103
*VIA CM/ECF*

Sharon J. Cobham
5312 Grande Gate Drive
Raleigh, NC 27613
*VIA U.S. MAIL*

This the 19th day of May, 2014.

                OAK CITY LAW LLP

           By: /s/ Robert E. Fields III
              Robert E. Fields III
              NC Bar No. 12946
              702 N. Blount St.
              Raleigh, NC 27604
              Rob.Fields@OakCityLaw.com
              Phone: (919) 899-9655
              Fax: (919) 516-0572